**United States District Court**
For the Northern District of California

1
2
3
4
5                        UNITED STATES DISTRICT COURT

6                        NORTHERN DISTRICT OF CALIFORNIA

7

8   KENNETH NGUYEN,                              No. C-10-4807 JCS

9              Plaintiff,                         **ORDER GRANTING PLAINTIFF'S
                                                 MOTION AND DENYING
10        v.                                     DEFENDANT'S MOTION AND
                                                 REMANDING FOR AN IMMEDIATE
11  MICHAEL J. ASTRUE,                           AWARD OF BENEFITS TO PLAINTIFF**

12             Defendant.                         **[Docket Nos. 18, 19]**
    _____/

13

14  **I.      INTRODUCTION**

15        Kenneth Nguyen ("Plaintiff") seeks review of the final decision of the Commissioner of the

16  Social Security Administration ("Commissioner," "Defendant") denying his Application for

17  disability insurance and Supplemental Security Income ("SSI") benefits under the Social Security

18  Act ("SSA").  Plaintiff asks the Court to reverse the Commissioner's denial of benefits and remand

19  with instructions to award benefits or, in the alternative, for additional administrative proceedings.

20  For the reasons stated below, the Court GRANTS Plaintiff's Motion for Summary Judgment,

21  DENIES Defendant's Motion for Summary Judgment, reverses the decision of the Commissioner

22  and remands an immediate award of benefits to Plaintiff.[1]

23  **II.     BACKGROUND**

24        **A.      Procedural Background**

25        Plaintiff applied for disability benefits on August 24, 2007, alleging disability since

26  December 31, 2002.  Administrative Record ("AR") 155-67.  Plaintiff's claim was initially denied

27  _____

28        [1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to
    28 U.S.C. § 636(c).  Docket Nos. 5 & 9.

on January 8, 2008.  AR 81.  Plaintiff filed a request for reconsideration, along with a statement of good cause for late filing on March 17, 2008.  AR 86, 89.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on August 14, 2008.  AR 99.  A hearing was held on November 17, 2009, in Oakland, California before ALJ Robert P. Wenton.  AR 36-72.  Plaintiff appeared at the hearing and testified.  AR 43-60.  Plaintiff was assisted in testifying by a Vietnamese language interpreter, Vien Tran.  AR 39.  At the hearing, testimony was also taken from vocational expert, Mary Ciddio.  AR 60-71.  Plaintiff was represented at the hearing by Brian Baghai an attorney with Homeless Action Center.  AR 38.  On January 29, 2010, the ALJ issued a decision denying benefits, finding that Plaintiff was not disabled as defined by the Social Security Act because, based upon the claimant's residual functional capacity and the testimony of the vocational expert at the hearing, the Plaintiff was capable of performing his past relevant work as an assembler.  AR 29-30.  The ALJ's decision became final when the Appeals Council declined review on September 9, 2010. AR 1-3.

Plaintiff filed this action on October 25, 2010, pursuant to 42 U.S.C. § 405(g) , which gives the Court jurisdiction to review the final decision of the Commissioner.  Docket No. 1 (Complaint for Judicial Review of Decision).  The parties filed cross-motions for summary judgment.  Docket Nos. 18 (Plaintiff's Motion for Summary Judgement and Supporting Memorandum of Points and Authorities ("Plaintiff's Motion")) & 19 (Defendant's Notice, Motion and Memorandum in Support of Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Motion")).

### B.       Plaintiff's Background

Plaintiff is a 54 year-old Vietnamese American man.  Plaintiff's Motion at 6; AR 224 (stating Plaintiff's date of birth as: 09/22/1957).  Plaintiff's primary language is Vietnamese and he speaks limited English.  Plaintiff's Motion at 6; AR 387.  Plaintiff grew up in Vietnam with his adoptive mother and uncle.  AR 387.  Plaintiff's uncle was physically and emotionally abusive towards him. *Id.*  Plaintiff left school in the ninth grade to fight in the Vietnam War and was held in a re-education camp in Vietnam.  *Id.*  Plaintiff came the United States by boat in 1982.  AR 334.  He worked odd jobs to support himself after entering the country (AR 328), and subsequently was employed as an

1  assembly line worker from 1984 through 2002.  AR 192.  In 1997, he relocated to California.  *Id.*

2  ### C.  Medical Evidence

3  #### 1.  Physical Health

4  On October 13, 2007, Plaintiff presented to the emergency room of the Alameda County

5  Medical Center with a 3 cm scalp laceration and headache as the result of an assault by two

6  assailants.  AR 273-4.  During the assault, the Plaintiff reported falling forward onto his hands and

7  knees after being struck above the right temple of his head.  AR 275.  Plaintiff reported that he did

8  not lose consciousness, although he felt dizzy as if the room were spinning.  *Id.*  On October 24,

9  2007, Plaintiff returned to the Alameda County Medical Center to have surgical staples removed

10  from the wound site.  AR 279.  On June 20, 2008, Plaintiff visited Dr. Kevin Li, M.D. and was given

11  a Medical Source Statement (Physical).  AR 425-6.  Dr. Li described Plaintiff prognosis as "fair."

12  AR 426.  Dr. Li found that Plaintiff's ability to lift or carry weights of greater than ten pounds was

13  impaired due to chronic lower back pain.  AR 425.  Additionally, Dr. Li determined that the Plaintiff

14  would need to be able to alternate between standing and sitting throughout the day and that Plaintiff

15  had environmental restrictions in his ability to work relative to heights, moving machinery, and

16  chemicals.  AR 426.

17  #### 2.  Mental Health

18  The Plaintiff has a lengthy medical history documented in the Administrative Record, which

19  is summarized here chronologically.

20  On January 2, 2008, Plaintiff was initially assessed at Asian Community Mental Health

21  Services by Mai Pham, Psy.D.T. and Lilly Lue Stearns, Ph.D.  AR 335-40.  Drs. Pham and Stearns

22  reported, under Section 6 "Mental Status Examination," Subpart A, "Appearance & General

23  Behavior" that Plaintiff's dress was untidy and dirty, Plaintiff's posture was tense, Plaintiff's facial

24  expression was angry, Plaintiff's psychomotor activity was within normal limits, and Plaintiff's level

25  of consciousness was alert.  AR 335.  Under Subpart B, "Emotional Reactions," Plaintiff's attitude

26  was cooperative and evasive, Plaintiff's mood and affect was anxious, and Plaintiff's speech was

27  overtalkative, dramatic, and pressured.  *Id.*  Under Subpart C, "Thought Process & Flow of Mental

28  Activity" Drs. Pham and Stearns observed Plaintiff was tangential and it required a long time for

United States District Court

For the Northern District of California

1   Plaintiff to tell his story.  *Id.*  Under Subpart D, "Perceptions and Contents of Thoughts" the Plaintiff

2   had somatic complaints, and hallucinations.  AR 336.  Under Subpart E, "Orientation and Memory"

3   the Plaintiff was oriented to person, place, and time, and had fair concentration, memory, insight and

4   judgement, although Plaintiff demonstrated below average intellectual functioning.  *Id.*  Drs. Pham

5   and Stearns diagnosed Plaintiff as suffering from Post Traumatic Stress Disorder ("PTSD"), and

6   alcohol abuse and diagnosed Plaintiff with a Global Assessment of Functioning ("GAF") score of

7   between 45 and 50.  AR 338.  Drs. Pham and Stearns gave Plaintiff a "fair" prognosis.  AR 339.

8        On January 10, 2008, Plaintiff received an initial mental evaluation at Asian Community

9   Mental Health Services from Dr. Tuong-Vi Ta, M.D.  AR 328-9.  Dr. Ta noted that Plaintiff believes

10  he started hearing voices when he was tortured in a Vietnamese re-education camp during and after

11  the Vietnam War.  AR 328.  Dr. Ta also noted that Plaintiff has mostly negative comments about

12  himself, and complains of poor sleep, severe headaches, and nightmares.  Dr. Ta noted that

13  Plaintiff's "Behavior and feelings / Daily activities" are limited.  *Id.*  Dr. Ta described Plaintiff's

14  appearance as "neat, clean, good eye contact, psychomotor activities [within normal range]."  *Id.*

15  Plaintiff's speech was, "coherent, relevant, [and] goal-directed."  *Id.*  Plaintiff's mood and affects

16  were, "neutral [and] appropriate."  *Id.*  As to Plaintiff's thought process and content, Plaintiff suffers

17  "intrusive thoughts [including]...[n]ightmares about the war, experiences during the incarceration

18  and when he was injured by strangers in the street."  AR 339.  Plaintiff demonstrated no disturbed

19  behavior or suicidal thoughts or other thoughts of violence.  *Id.*  Dr. Ta assessed Plaintiff's cognitive

20  functioning as, "grossly OK."  *Id.*  Dr. Ta diagnosed Plaintiff with PTSD and a GAF score of 45 -

21  50.  *Id.*

22       The Plaintiff was seen again for a followup at Asian Community Mental Health Services on

23  April 18, 2008.  AR 326.  During the followup, Dr. Ta noted that Plaintiff's compliance was good

24  and that Plaintiff was feeling somewhat better and he was receiving help from a friend that made a

25  difference in his life.  *Id.*  Dr. Ta noted Plaintiff reported improved sleep, less nightmares and

26  mumbling to himself, although Plaintiff continued to show poor judgment at times.  *Id.*  Dr. Ta also

27  noted that Plaintiff's behavior and feeling / daily activities was limited.  *Id.*  Plaintiff's appearance

28  was neat and clean, Plaintiff made good eye contact and his psychomotor activities were within

United States District Court

For the Northern District of California

1    normal range.  AR 327.  Plaintiff's speech was coherent, relevant and goal-directed.  *Id.*  Plaintiff's

2    mood was neutral and appropriate.  *Id.*  As to thought process and content, Dr. Ta noted Plaintiff,

3    "appears to make more sense when he talks."  *Id.*  Dr. Ta did not note any disturbed behavior and

4    assessed Plaintiff's cognitive functioning as "grossly OK."  *Id.*  Dr. Ta again diagnosed Plaintiff

5    with PTSD and a GAF Score of 45-50.

6           The Plaintiff was seen again at Asian Community Mental Health Services on May 20, 2008.

7    AR 324.  Dr. Ta noted Plaintiff reported less intrusive thoughts, although he "still has a lot of

8    dreams."  *Id.*  Dr. Ta made the same notations regarding Plaintiff's behavior, appearance, speech,

9    mood, thought processes, and cognitive functioning as during the prior followup.  Dr. Ta again

10   diagnosed Plaintiff with PTSD and a GAF Score of between 45 and 50.  AR 325.

11          On June 24, 2008,  Dr. Barbara A. Smith, M.D., the State Agency non-examining medical

12   evaluator completed a Psychiatric Review Technique of the Plaintiff.  AR 356-66.  Dr. Smith noted

13   Plaintiff suffers from affective disorders, anxiety-related disorders, and substance addiction

14   disorders.  AR 356.  Dr. Smith also found that Plaintiff suffers from depressive syndrome

15   characterized by at least four of the following: appetite disturbance with change in weight, sleep

16   disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or

17   worthlessness, difficulty concentrating or thinking, and hallucinations, delusions or paranoid

18   thinking.  AR 358.  Dr. Smith further found that Plaintiff suffers from anxiety as evidenced by

19   recurrent and intrusive recollections of a traumatic experience, which are a source of marked

20   distress.  AR 360.  Based upon these findings, Dr. Smith assessed Plaintiff's degree of limitation as

21   moderate with regard to his restriction of activities of daily living, difficulties in maintaining social

22   functioning, and difficulties in maintaining concentration, persistence, or pace.  AR 364.  Dr. Smith

23   found no repeated episodes of decompensation of an extended duration.  *Id.*  Dr. Smith opined that

24   Plaintiff retains the ability: to perform unskilled non-detailed tasks, to perform simple tasks for a

25   normal workweek, to interact with supervisors and coworkers and the general public, and has

26   moderate impairment in the ability to adapt to changes in the workplace.  AR 366.

27          On June 24, 2008, Dr. Smith also conducted a Mental Residual Functional Capacity

28   Assessment of the Plaintiff.  AR 367-9.  Dr. Smith opined under Section A, "Understanding and

Memory," that Plaintiff is not significantly limited in his ability to remember locations and work-like procedures or in his ability to understand and remember very short and simple instructions.  AR 367.  Dr. Smith did note moderate limitation in Plaintiff's ability to understand and remember detailed instructions.  *Id.* Under Section B, "Sustained Concentration and Persistence," Dr. Smith opined that Plaintiff is not significantly limited in his ability to carry out very short and simple instructions.  *Id.*  However, Dr. Smith opined that Plaintiff is moderately impaired in his ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule; to maintain regular attendance; and to be punctual within customary tolerances.  *Id.*  Additionally, Dr. Smith opined that Plaintiff is moderately limited in his ability to sustain an ordinary routine; to work in coordination with or proximity to others without being distracted by them; to make simple work-related decisions and to complete a normal workday and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods.  *Id.*  Under Section C, "Social Interaction," Dr. Smith opined that Plaintiff is moderately impaired in his ability to interact appropriately with the general public; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  AR 368.  Under Section D, "Adaptation," Dr. Smith opined that Plaintiff is moderately limited in his ability to respond appropriately to changes in the work setting and that Plaintiff is not significantly limited in his ability to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; or to set realistic goals or make plans independently of others. *Id.* Dr. Smith opined that Plaintiff is "able to carry out and complete simple tasks and instructions," and that Plaintiff's, "[Concentration, Persistence, and Pace] are adequate for nonpublic, low stress work environments. [Plaintiff] can adapt to change and complete a full 40 hour work week."  AR 369.

On September 25, 2008, the Plaintiff presented to Ede Thomsen, Ph.D., for a psychological evaluation.  AR 386-93.  Dr. Thomsen states that Plaintiff:

Has long-standing severe mental health problems which are negatively impacting his ability to find and hold a job, have a place to live, and have any social supports beyond acquaintances. He evidenced executive functioning difficulties in the form of abstraction problems. He endorsed experiencing concentration problems and severe memory problems. His mental health problems have negatively impacted his ability to manage his personal affairs as well as to make well informed decisions based upon solid logic.

AR 388. Dr. Thomsen administered the following tests: 1) Clinical Interview; 2) Mini-Mental State Examination; 3) Montreal Cognitive Assessment; 4) Barona Estimate; 5) Trail Making A; 6) Beck Depression Inventory; 7) Beck Anxiety Inventory; 8) Minnesota Multiphasic Personality Inventory; 9) Mental Status/Psychiatric Symptoms Sheet; and 10) Review of Medical/Psychiatric Records. AR 389.

Dr. Thomsen made the following findings as to Plaintiff's Cognitive Functioning: as to Plaintiff's "Overall Intellectual Functioning," "[b]ased upon [Plaintiff's] occupational and educational attainment, as well as his Barona Estimate, [Plaintiff's] IQ is estimated to be in the low average range. His current MMSE[2] is 18/30." *Id.* He found, as to Plaintiff's "Attention/Concentration" "[o]verall, it appears that [Plaintiff] is experiencing deficits in attention and concentration, as evidenced in his poor every day functioning, due to the head trauma he sustained along with his symptoms of Posttraumatic Stress Disorder and Major Depression." *Id.* As to "Executive Functioning" Dr. Thomsen found that Plaintiff, "is functioning in the severely impaired range." *Id.* As to "Memory" Dr. Thomsen found that Plaintiff, "is functioning in the severely impaired range." *Id.* As to "Language" Dr. Thomsen found that Plaintiff, "is functioning in the moderately impaired range." AR 390. As to "Visual/Spatial Abilities" Dr. Thomsen found Plaintiff, "has a severe deficit in this domain." *Id.* Finally, as to "Sensory/Motor Abilities" Dr. Thomsen found Plaintiff, "evidenced slightly decreased motor functions" and "appears to have a mild deficit in this domain." *Id.*

Dr. Thomsen made the following findings as to Plaintiff's Emotional Functioning: He found Plaintiff's "Beck Anxiety Inventory results indicate that he has severe anxiety." *Id.* He found Plaintiff's "Beck Depression Inventory results indicate that he is experiencing severe depression."

_____

[2] Mini-Mental State Examination.

1    *Id.* Further, he found, "[o]verall, [Plaintiff] has difficulty making effective decisions, coming up

2    with solutions to problems, and managing daily tasks and affairs.  His faulty ability to understand

3    others makes him unable to accurately read social situations in ways that are important for accurate

4    reasoning and sound judgement."  AR 391.  Dr. Thomsen concluded, "[t]he results of the assessment

5    indicate that [Plaintiff] has Posttraumatic Stress Disorder and Major Depressive Disorder with

6    Psychotic Features. [Plaintiff] has longstanding severe mental health problems dating back to before

7    he was in the military in Vietnam."  *Id.*

8        On October 5, 2009, Dr. Li completed a Medical Source Statement of Ability to Do Work-

9    Related Activities (Mental) on the Plaintiff.  AR 427-9.  Dr. Li's evaluation noted both "marked"

10   and "extreme" impairment in Plaintiff's functioning.  *Id.*  "Marked" impairment is defined within the

11   form as, "[t]here is a serious limitation in this area.  There is a substantial loss in the ability to

12   effectively function."  AR 427.  "Extreme" impairment is defined within the form as, "[t]here is a

13   major limitation in this area.  There is no useful ability to function in this area."  *Id.*  Dr. Li noted

14   Plaintiff exhibited marked dysfunction in the areas of understanding and remembering simple

15   instructions, carrying out simple instructions, and making judgments on simple work-related

16   decisions.  AR 427.  Dr. Li also noted that Plaintiff exhibited extreme dysfunction in the areas of

17   understanding and remembering complex instructions, carrying out complex instructions, and

18   making judgments on complex work-related decisions.  *Id.*  As to Plaintiff's abilities to interact

19   appropriately with supervisors, co-workers, and the public, as well as respond to changes in a

20   routine work setting, Dr. Li noted marked impairments in the ability to interact appropriately with

21   the public, supervisors, and co-workers.  AR 428.  Dr. Li noted extreme impairment in Plaintiff's

22   ability to respond appropriately to usual work situations and to changes in a routine work setting.  *Id.*

23   Dr. Li noted that the particular factors that support his assessment include that: "Mr. Nguyen has

24   history of both Post Traumatic Stress Disorder and Depression with Psychotic Features.  He

25   experiences auditory hallucinations (hears voices) on a regular basis.  *Id.*

26       **D.      The Administrative Hearing**

27       The ALJ held an administrative hearing on November 17, 2009, at which Plaintiff appeared.

28   At the hearing, the ALJ asked Plaintiff if he was presently employed.  AR 43.  Plaintiff testified that

he has been unable to work for the last three or four years "because of my illness." AR 43.  The ALJ

inquired as to the reasons why Plaintiff is no longer able to work.  AR 46.  Plaintiff testified the

reasons he no longer works are because he was laid off after the terrorist attacks on September 11,

2001 and experiences hemorrhoids which affect his ability to sit for prolonged periods.  AR 46.

However, Plaintiff also testified that the type of assembly line work which he did previously

required him to stand, not to sit.  *Id.*  Plaintiff testified that he hears voices in his ears and mumbles

to himself although he does not know why.  AR 47.  Plaintiff further testified that he experiences

headaches, memory problems and hears a buzzing sound in his ears, which affect his ability to think.

*Id.*  Plaintiff testified that he has impaired hearing, although he wears no hearing aid because he

cannot afford one.  AR 48.

The ALJ also inquired as to Plaintiff's source of income and support.  AR 43.  Plaintiff

testified that he receives income support in the form of General Assistance and food stamps.  *Id.*

Plaintiff also testified that he lives with a friend.  *Id.*  The ALJ inquired as to Plaintiff's ability to

communicate both in his native Vietnamese and in English.  AR 44.  Plaintiff testified that he has

some ability to read and write in Vietnamese, though such is limited by his poor education.  *Id.*

Plaintiff testified that he has some limited understanding of English and would be shown how to

complete tasks by supervisors.  *Id.*

The ALJ also inquired as to Plaintiff's history and time in Vietnam.  AR 50-52.  Plaintiff

testified that he volunteered at the age of seventeen for the South Vietnamese army/marine corps.

AR 51.  Plaintiff testified that around 1980 or 1981 he traveled by boat from Vietnam to Malaysia

and approximately a year thereafter came to Michigan from Malaysia.  AR 51-52.

Plaintiff's representative asked further questions about Plaintiff's history and time in

Vietnam.  AR 52.  Plaintiff testified that he dropped out of school to volunteer for the war and was

injured in the head and neck during the war.  *Id.*  Plaintiff further testified that after the war he was

taken and held as a prisoner for approximately five months.  AR 53.  Plaintiff testified to trying to

escape from the prison camp and being handcuffed and beaten about his legs and head in response

by guards.  *Id.*  Plaintiff testified that he now wears a complete set of dentures as a result of his teeth

being knocked out during the beatings he received while in the prison camp.  *Id.*  Plaintiff testified

United States District Court

For the Northern District of California

1   that he experiences foot problems now which he believes to be the result of time spent working

2   barefoot in the prison camp.  AR 54.  Plaintiff testified that he can only walk or stand now for about

3   ten minutes at a time due to numbness in his foot and a "gout-like" pain.  AR 55.  Plaintiff also

4   testified that due to bleeding from his hemorrhoids he must wear a diaper and that his hemorrhoids

5   cause daily pain.  AR 54-5.  Plaintiff testified that his pain impedes his ability to sleep, causing him

6   to toss and turn, and as a result, only sleeps one to two hours per night.  AR 56.

7        Plaintiff's representative also elicited testimony from the Plaintiff regarding what he does

8   while at home.  AR 58.  Plaintiff testified that the friend with whom he lives does not allow him to

9   cook, but instead Plaintiff uses a microwave to heat water for noodle soup because Plaintiff forgets

10  to turn off the gas on the stove due to his memory problems.  *Id.*  Plaintiff testified that he performs

11  simple cleaning around his friend's apartment including wiping off surfaces after eating and light

12  cleaning for cobwebs and dust.  AR 59.  When asked by his representative why Plaintiff did not

13  engage in more household duties in the apartment, Plaintiff testified that he cannot engage in

14  bending to clean because it causes his hemorrhoids to prolapse. *Id.*

15       At the close of Plaintiff's testimony, the ALJ then heard testimony from Mary Ciddio, a

16  vocational expert.  AR 60-72.  The ALJ asked Ms. Ciddio questions regarding the Plaintiff's

17  relevant work history.  AR 60-64.  Ms. Ciddio testified that Plaintiff has had a number of different

18  employers, but appears to always have been employed as an assembler.  AR 61.  Ms. Ciddio testified

19  that the job of an assembler required no stooping or bending, as work is performed at chest or torso

20  level.  AR 62.  The ALJ also elicited testimony from Ms. Ciddio regarding the degree to which

21  diminished concentration or difficulty focusing one's reasoning would have on the job of an

22  assembler.  AR 63.  Ms. Ciddio testified that there would be no impact because the work of an

23  assembler is considered routine, although she also testified that such a job would require a constant

24  pace and persistence as it is a production job.  *Id.*

     **E.**       **The  ALJ's Five-Step Analysis and Findings of Fact**

            **1.**        **Requirements of The Five-Step Analysis**

27       Disability insurance benefits are available under the Social Security Act when an eligible

28  claimant is unable "to engage in any substantial gainful activity by reason of any medically

United States District Court

For the Northern District of California

1   determinable physical or mental impairment . . . which has lasted or can be expected to last for a

2   continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C.

3   § 423(a)(1).  A claimant is only found disabled if his physical or mental impairments are of such

4   severity that he is not only unable to do his previous work but also "cannot, considering his age,

5   education, and work experience, engage in any other kind of substantial gainful work which exists in

6   the national economy." 42 U.S.C. § 423(d)(2)(A).  The claimant bears the burden of proof in

7   establishing a disability.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, 519 U.S. 881

8   (1996).

9          The Commissioner has established a sequential five-part evaluation process to determine

10  whether a claimant is disabled under the Social Security Act.  20 C.F.R. § 404.1520(a).  At the First

11  Step, the Commissioner considers whether the claimant is engaged in "substantial gainful activity."

12  20 C.F.R. § 404.1520(a)(4)(I).  If he is, the Commissioner finds that the claimant is not disabled, and

13  the evaluation stops.  If the claimant is not engaged in substantial gainful activity, the Commissioner

14  proceeds to the Second Step and considers whether the claimant has "a severe medically

15  determinable physical or mental impairment...or combination of impairments that is severe," which

16  meets the duration requirement in 20 C.F.R. § 404.1509.  20 C.F.R. § 404.1520(a)(4)(ii).  An

17  impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic

18  work activities." 20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment,

19  disability benefits are denied at this step.  If it is determined that one or more impairments are

20  severe, the Commissioner will next perform the Third Step of the analysis, comparing the medical

21  severity of the claimant's impairments to a compiled listing of impairments that the Commissioner

22  has found to be disabling.  20 C.F.R. § 404.1520(a)(4)(iii).  If one or a combination of the claimant's

23  impairments meet or equal a listed impairment, the claimant is found to be disabled.  *Id.*  Otherwise,

24  the Commissioner proceeds to the Fourth Step and considers the claimant's residual functional

25  capacity ("RFC") in light of his impairments and whether the claimant can perform past relevant

26  work.  20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404.1560(b) (defining past relevant work).  If the

27  claimant can still perform previous work, he is found not to be disabled.  20 C.F.R. §

28  404.1520(a)(4)(iv).  If the claimant cannot perform past relevant work, the Commissioner performs

the fifth and final step of the analysis.  20 C.F.R. § 404.1520(a)(4)(v).  At the Fifth Step, the burden

shifts to the Commissioner to show that the claimant, in light of his impairments, age, education, and

work experience, can perform other jobs in the national economy.  *Johnson v. Chater*, 108 F.3d 178,

180 (9th Cir. 1997); 20 C.F.R. § 404.1520(a)(4)(v).  A claimant who is able to perform other jobs

that are available in significant numbers in the national economy is not considered disabled, and will

not receive disability benefits.  20 C.F.R. § 404.1520(f).  Conversely, where there are no jobs

available in significant numbers in the national economy that the claimant can perform, the claimant

is found to be disabled.  *Id.*

Where there is evidence of a mental impairment that allegedly prevents a claimant from

working, the Social Security Administration has supplemented the five-step sequential evaluation

process with additional regulations to assist the ALJ in determining the severity of the mental

impairment at the second and third steps.  *Clayton v. Astrue*, 2011 WL 997144, at * 3 (E.D. Cal.

Mar. 17, 2011) (citing 20 C.F.R. §§ 404.1520(a) & 416.920(a)).   These regulations provide, in

relevant part, as follows:

> (a) General. The steps outlined in § 404.1520 apply to the evaluation of physical and mental impairments. In addition, when we evaluate the severity of mental impairments for adults (persons age 18 and over) and in persons under age 18 when Part A of the Listing of Impairments is used, we must follow a special technique at each level in the administrative review process. ...
>
> Using the technique helps us:
>
> (1) Identify the need for additional evidence to determine impairment severity;
>
> (2) Consider and evaluate functional consequences of the mental disorder(s) relevant to your ability to work; and
>
> (3) Organize and present our findings in a clear, concise, and consistent manner.
>
> (b) Use of the technique.
>
> (1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). See § 404.1508 for more information about what is needed to show a medically determinable impairment. If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.
>
> (2) We must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section and record our findings as set out in paragraph (e) of this section.

United States District Court

For the Northern District of California

(c) Rating the degree of functional limitation.

(1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

(d) Use of the technique to evaluate mental impairments. After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).

(1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521).

(2) If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder. We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. We will record the presence or absence of the criteria and the rating of the degree of functional limitation on a standard document at the initial and reconsideration levels of the administrative review process, or in the decision at the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision). See paragraph (e) of this section.

(3) If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.

20 C.F.R. §§ 404.1520a(a) - (d).  Under the regulations, the ALJ is required to incorporate pertinent

findings and conclusions based on the technique outlined above in his or her decision.  20 C.F.R. §

1   404.1520a(e)(4).  As part of this requirement, the ALJ must "include a specific finding as to the

2   degree of limitation in each of the functional areas" described above. *Id.*

3              **2.        The ALJ's Findings in the Five-Step Analysis**

4          At the First Step, the ALJ found that Plaintiff has not engaged in substantial gainful activity

5   since December 31, 2002, the alleged onset date of his disability.  AR 21.

6          At the Second Step, the ALJ determined, "[t]he medical evidence establishes that the

7   [Plaintiff] has the medically determined impairments of major depressive disorder with psychotic

8   features, PTSD, foot pain and hemorrhoids, which are each considered severe under the Social

9   Security Regulations since they have more than a minimal impact on his capacity to perform basic

10  work functions."  AR 24.  As to Plaintiff's claimed headaches, the ALJ did not find that such

11  headaches supported the conclusion that Plaintiff cannot perform gainful activity due to such

12  impairment.  *Id.*  The ALJ determined that Plaintiff rarely complained of headaches to his treating

13  physician and that there was no record of any complications due to headache or adverse side effects

14  due to his headache medication.  *Id.*  The ALJ determined that Plaintiff's headaches are non-severe

15  based upon these findings and the October 23, 2007 opinion of Nayvin Gordon, M.D., a State

16  Agency physician.  *Id.*  Finally, the ALJ determined, although Plaintiff testified to having

17  impairments in vision and hearing, that because Plaintiff had appeared at the hearing without his

18  glasses, his driver's license listed no vision restrictions, and because he had never been prescribed a

19  hearing aid, that Plaintiff had failed to meet his burden of proving that hearing and vision difficulties

20  constitute severe impairments.  *Id.*

21         At the Third Step, the ALJ found that Plaintiff, "does not have an impairment or combination

22  of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404,

23  Subpart P, Appendix 1." *Id.*  The ALJ found that Plaintiff does not have a medical condition that

24  meets the specific clinical requirements of any section of the Listing of Impairments because

25  Plaintiff's "mental impairments do not meet or medically equal the criteria of listings 12.04 or

26  12.06." AR 24-25.  The ALJ considered whether the "paragraph B" criteria were satisfied and found

27  that Plaintiff's "restrictions of daily activities to be mild; his restrictions in maintaining social

28  functioning to be moderate; and his restrictions in maintaining concentration, persistence or pace to

be moderate with no episodes of decompensation, which have been of extended duration." AR 25. The ALJ concluded that because the Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." *Id.* The ALJ also considered whether the "paragraph C" criteria of 12.04 and 12.06 had been established. *Id.* The ALJ found that:

> the evidence fails to establish the presence of the "paragraph C" criteria. While the medical evidence does document diagnosis and treatment of depressive disorder and PTSD for a short period of time, there is no evidence of an inability to function outside a highly supportive living arrangement, or evidence of significant decompensation as a result of the claimant's other impairments or residual disease process that has resulted in such marginal adjustment that even minimal increase in mental demands or change in environment would be predicted to cause the claimant to decompensate.

*Id.*

At the Fourth Step, the ALJ found that Plaintiff, "has the residual functional capacity to perform 'light' work as defined in 20 C.F.R. 404.1567(b) and 416.967(b); except that the [Plaintiff] is limited to simple repetitive work requiring little concentration." AR 25-6. In considering the Plaintiff's symptoms, the ALJ undertook a two-step process which determined first, whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the Plaintiff's pain or other symptoms. AR 26. Second, the ALJ determined the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine the extent to which they limit the Plaintiff's ability to do basic work activities. *Id.*

As to physical opinion evidence, the ALJ found that Plaintiff's allegations of disabling headaches, poor hearing, and poor vision to be non-severe. *Id.* The ALJ also found that Plaintiff's:

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

*Id.*

In support of this conclusion, the ALJ stated that there is "no evidence that the [Plaintiff] has undergone any prolonged treatment for any of his reported impairments and no treating or examining sources has assessed the [Plaintiff] with the functional limitations to the degree he

United States District Court

For the Northern District of California

1   alleges." *Id.*  The ALJ noted that there was no indication that Plaintiff had ever been referred for

2   surgery, pain management, physical therapy or any other treatment for his reported complaints and

3   that Plaintiff had not generally received the type of medical treatment one would expect for a totally

4   disabled individual.  *Id.*  Additionally, the ALJ noted that Plaintiff's levels of medication for his

5   physical pain, "suggest his symptoms are not particularly serious."  AR 27.  Furthermore, the ALJ

6   observed, "the record contains sparse documentation and objective medical evidence in connection

7   with the [Plaintiff's] foot pain and hemorrhoids; in fact, the [Plaintiff's] allegations of hemorrhoids

8   appears to be based solely on his subjective complaints and unsupported by the medical record."  *Id.*

9   Other factors weighing in the ALJ's determination of Plaintiff's lack of credibility included that

10  Plaintiff's appearance and demeanor at the hearing were "essentially normal" with Plaintiff

11  appearing to have no difficulty understanding the questions asked and the answers given were

12  appropriate, although the ALJ also noted that such observation was "only one among many being

13  relied upon in reaching a conclusion regarding the credibility of the [Plaintiff's] allegations and the

14  [Plaintiff's] residual functional capacity."  *Id.*  The ALJ also included Plaintiff's failure to attend

15  consultative psychological evaluations as a mark bearing negatively on Plaintiff's credibility.  *Id.*

16  The ALJ decided to give little weight to the physical opinion evidence of Dr. Li because, "the

17  medical record does not contain records from Dr. Li, and as such, his opinion appears to rely, in part,

18  on an assessment of impairments for which he did not treat the [Plaintiff]...plus, there is no support

19  for placing any environmental limitations of the [Plaintiff].  *Id.*  Nevertheless, despite giving little

20  weight to the opinion of Dr. Li with regard to Plaintiff's physical restrictions, the ALJ stated that he

21  was giving "the [Plaintiff] the benefit of doubt with respect to his foot pain and places him at the

22  light exertional level."  *Id.*

23       As to the mental opinion evidence, the ALJ gave greater weight to the opinion of Dr. Smith,

24  a non-treating, non-examining, State Agency examiner than to Dr. Thomsen.  *Id.*  In support of this

25  conclusion, the ALJ relied upon three pieces of evidence.  First, Plaintiff's treating psychiatrist, Dr.

26  Ta had not limited Plaintiff to the same degree as Dr. Thomsen, who had never treated the Plaintiff.

27  AR 28.  Second, the, "assessment made by Dr. Thomsen makes no allowance for the fact that the

28  [Plaintiff] is probably not functionally literate in English, and there is little foundation for most of

United States District Court
For the Northern District of California

1    the conclusions made by Dr. Thomsen when we exclude important characteristics such as culture

2    and language." *Id.* Third, the ALJ found that "the assessment made by Dr. Thomsen [was]

3    inconsistent with the reports made by the [Plaintiff's] treating physicians, Drs. Pham and Stearns."

4    *Id.* In support of this conclusion, the ALJ noted that although Drs. Pham and Stearns stated that

5    Plaintiff demonstrated paranoid features during therapy, he was nonetheless oriented to person,

6    place, and time and did not express any assaultive thoughts, suicidal or homicidal thoughts or

7    delusions and that his judgment, memory and concentration were fair. *Id.* The ALJ also pointed to

8    Plaintiff's neat and clean appearance, good eye contact, and goal-directed speech during his three

9    2008 therapy sessions with Dr. Ta as weighing in favor of Dr. Smith's evaluation of Plaintiff. *Id.*

10   Additionally, the ALJ emphasized, in discounting the evidence of Dr. Thomsen, that Plaintiff,

11   "underwent psychological assessments over the past 18 months not in an attempt to seek treatment

12   for symptoms, but rather, through attorney referral and in connection with an effort to generate

13   evidence for the current appeal. *Id.* The ALJ tempered his discounting of Dr. Thomsen's medical

14   opinion by stating, "[a]lthough such evidence is certainly legitimate and deserves due consideration,

15   the context in which it was produced cannot be entirely ignored." *Id.*

16        Based upon the physical and mental opinion evidence discussed, the ALJ determined that

17   Plaintiff has the residual functional capacity to perform a full range of light work except that he is

18   limited to simple repetitive work requiring little concentration. *Id.* The ALJ determined Plaintiff's

19   residual functional capacity to be consistent with the medical history and degree of treatment

20   received. *Id.* Having concluded Plaintiff retains the capacity to perform "light work" as defined in

21   20 C.F.R. §§ 404.1567(b) and 416.967(b), the ALJ addressed Plaintiff's ability to continue to

22   perform his past relevant work as an assembler.

23        The ALJ determine that Plaintiff is capable of performing his past relevant work as an

24   assembler as such work does not require the performance of work-related activities precluded by

25   Plaintiff's residual functional capacity. The ALJ based this determination upon testimony given at

26   the hearing of vocational expert Mary R. Ciddio. *Id.* Ms. Ciddio testified Plaintiff's past relevant

27   work as an assembler was "light" semi-skilled work.[3] *Id.* The ALJ relied upon Ms. Ciddio's

28

_____

   [3]As defined in 20 § C.F.R. 404.1567(b).

United States District Court

For the Northern District of California

testimony that Plaintiff's: 1) difficulty stooping/bending would not impair the work of an assembler because such work is performed at a high stool or chair; 2) poor communication skills in English would not affect his ability to do work because of little public interaction; and 3) diminished concentration and ability only to perform light work would not have an impact on the ability to be an assembler.  AR 28-9.  On the basis of this testimony, the ALJ determined that Plaintiff is capable of performing his past relevant work as an assembler and that Plaintiff has therefore not been under a disability as defined in the Social Security Act at any time through the date of the ALJ's decision.  AR 29.

### D.     The Summary Judgment Motions

#### 1.     Plaintiff's Contentions

Plaintiff contends the ALJ erred at the Second, Third, Fourth, and Fifth Steps of his sequential five-step analysis.  Plaintiff's Motion at 8-25.  With respect to the Second Step of the analysis, Plaintiff argues that the ALJ erred by failing to find that Plaintiff's headache pain symptoms are severe.  *Id.* at 17-20.  Plaintiff argues that the ALJ erred when he failed to find that Plaintiff's impairments do not meet or equal the listings.  *Id.* at 20.  Plaintiff contends that the ALJ rendered only a boilerplate finding that Plaintiff's impairments do not meet the "paragraph B" criteria.  *Id*. at 21.  Plaintiff asserts further that the ALJ failed to explain the basis for his findings that Plaintiff's restrictions of daily activities are "mild;" his restrictions in maintaining social functioning are "moderate;" and his restrictions in maintaining concentration, persistence, or pace are "moderate."  *Id.*  The ALJ does not explain the basis for these findings.  *Id.*  Plaintiff asserts that although the ALJ decided to give greater weight to the opinion of the non-examining state agency medical consultant, Dr. Smith, she nonetheless restricted Plaintiff's activities of daily living to "moderate."  *Id.*  Plaintiff argues that even if the ALJ was adopting the opinion of Dr. Smith with regard to activities of daily living, Dr. Smith's opinion alone is not substantial evidence.  *Id.*  (citing *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d at 602).  Plaintiff argues, pursuant to *McCarthey v. Massanari*, 298 F.3d at 1075, that the ALJ's decision must be supported by substantial evidence and that a boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not meet a listing.  Plaintiff's Motion at 20 (citing *Lewis v. Apfel*, 236 F.3d 503,

United States District Court

For the Northern District of California

512 (9th Cir. 2001)).  Plaintiff also argues that the ALJ erred at the Third Step by failing to mention the Medical Source Statement (Mental) of Dr. Li and by assigning greater weight to the medical opinion of Dr. Smith, a non-treating, non-examining physician than to any of Plaintiff's treating or examining physicians.  Plaintiff's Motion at 21.  Plaintiff contends that the ALJ erred at the Fourth Step in his sequential analysis by finding that Plaintiff has the residual functional capacity to be capable of performing his past relevant work.  *Id*.  Specifically, the ALJ erred at the Fourth Step by: 1) failing to consider the medical opinion of Dr. Li; 2) improperly discounting the medical opinions of Dr. Ta and Dr. Stearns; 3) improperly discounting the medical opinion of Dr. Thomsen; 4) improperly assigned greatest weight to the opinion of Dr. Smith; and 5) improperly discredited Plaintiff's credibility.  Plaintiff's *Id*. at 8-24.  Plaintiff argues the ALJ erred at the Fifth Step by failing to reach this step despite the weight of the evidence supporting a finding that Plaintiff's impairments prevent him from all past relevant work activity.  *Id.* at 24.

### 2.  Defendant's Contentions

Defendant argues that the ALJ made no errors at the Second, Third, and Fourth Steps, and was therefore not obligated to proceed to the Fifth Step.  Defendant's Motion at 2-13.  Defendant argues that the ALJ provided a valid basis for his conclusion that Plaintiff's headaches are not severe and that this finding is supported by substantial evidence.  *Id.* at 8.  Defendant argues further that substantial evidence supports the ALJ's finding at the Third Step that Plaintiff does not have any impairment which meets or equals the listings.  *Id*. at 11-2.  Defendant contends that the ALJ properly evaluated the medical opinion evidence of record and discounted the opinions of Dr. Ta, Dr. Stearns, and Dr. Thomsen, in favor of the opinion of Dr. Smith, the ALJ's failure to address the opinion of Dr. Li was harmless error, and that the ALJ properly discounted Plaintiff's credibility with regard to his pain symptoms.  *Id*. at 2-10, 12-13.  Defendant contends that the ALJ was not required to evaluate whether Plaintiff could perform other work in the national economy because the ALJ had already found that Plaintiff has the residual functional capacity to perform his past relevant work as an assembler.  *Id*. at 13.

1    **III.    ANALYSIS**

2        **A.    Legal Standard**

3        When asked to review the Commissioner's decision, the Court takes as conclusive any

4    findings of the Commissioner that are free from legal error and supported by "substantial evidence."

5    42 U.S.C. § 405(g).  Substantial evidence is "such evidence as a reasonable mind might accept as

6    adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial

7    evidence means "more than a mere scintilla," *id.*, but "less than a preponderance." *Desrosiers v.*

8    *Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  Even if the Commissioner's

9    findings are supported by substantial evidence, they should be set aside if proper legal standards

10   were not applied when weighing the evidence and in reaching a decision.  *Benitez v. Califano*, 573

11   F.2d 653, 655 (9th Cir. 1978).  In reviewing the record, the Court must consider both the evidence

12   that supports and detracts from the Commissioner's conclusion.  *Smolen v. Chater*, 80 F.3d 1273,

13   1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

14       **B.    Whether the ALJ Erred at the Second Step in Determining Plaintiff's Headaches
             are Non-Severe**
15

16       Plaintiff contends that the ALJ erred at the Second Step because he failed to provide clear

17   and convincing reasons for rejecting Plaintiff's testimony that his headaches are severe as required

18   under *Reddick*.  Plaintiff's Motion at 17-20; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

19   The Court disagrees.

20       A claimant applying for Social Security Disability Benefits bears the burden of proving that

21   he is disabled.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing *Johnson v. Shalala*, 60

22   F.3d 1428, 1432 (9th Cir. 1995).  A claimant must present complete and detailed objective medical

23   reports of their condition from licensed medical professionals.  *See id.*  (citing 20 C.F.R. §§

24   404.1512(a)-(b) & 404.1513(d)).  The ALJ is responsible for determining credibility, resolving

25   conflicts in medical testimony, and for resolving ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722

26   (9th Cir. 1998) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The burden at the

27   Second Step is relatively light. In particular, the Ninth Circuit has held that "the step two inquiry is a

28   *de minimis* screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273,

United States District Court

For the Northern District of California

1    1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137 at 153–54, 107 S.Ct. 2287, 96 L.Ed.2d

2    119 (1987)).  Thus, "[a]n impairment or combination of impairments can be found 'not severe' only

3    if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an

4    individuals ability to work.' " *Id.* (citing SSR 85–28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th

5    Cir.1988) (adopting SSR 85–28)).

6         In finding Plaintiff's headaches to be non-severe, the ALJ notes the record does not support

7    the conclusion Plaintiff cannot perform gainful activity due to such impairment.  AR 24.  The ALJ

8    notes Plaintiff rarely complained of headaches to his treating physician, there is no record of any

9    complications due to headache or adverse side effects due to headache medication, and no evidence

10   that Plaintiff has been prescribed medication for headaches.  *Id.*  Further, the ALJ points to the

11   October 23, 2007 report of Nayvin Gordon, M.D., a State Agency physician who concluded

12   Plaintiff's headaches are non-severe.  *Id.*  The only pain medication which Plaintiff appears to take

13   for his headaches is 500mg of Acetaminophen.  AR 27, 189, 216.  Dosage levels may be used to

14   suggest symptoms are not particularly serious.  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.

15   1995).  Defendant notes that a "usual dose" for Acetaminophen is between 325mg and 650mg four

16   to six times per day.  (citing *The Pill Book* 13-14 (Harold M. Silverman ed., Bantam Books 11th rev.

17   ed. 2004).  The lack of objective medical evidence with regard to Plaintiff's headaches, combined

18   with the report of Dr. Gordon concluding Plaintiff's headaches are non-severe provide clear and

19   convincing reasons for the ALJ to have concluded that Plaintiff were non-severe.

20        **C.    Whether the ALJ Erred At the Third Step in Determining Plaintiff's
               Impairments Do Not Meet One of the Listings**
21

22        Plaintiff contends the ALJ's finding at the Third Step of his sequential analysis, that Plaintiff

23   does not have mental impairments which medically equal the criteria of listings 12.04 or 12.06 is not

24   supported by substantial evidence and Plaintiff's major depressive disorder with psychotic features

25   and PTSD are sufficient to establish Plaintiff is disabled under the listings.  For the reasons

26   discussed more fully here and below, the Court agrees.

27        Listing 12.04 establishes that an individual with an affective disorder is disabled if his

28   symptoms include "[d]epressive syndrome characterized by at least four of the following: ...[s]leep

disturbances...[f]eelings of guilt or worthlessness...[d]ifficulty concentrating or thinking...[and] [h]allucinations, delusions or paranoid thinking;" and "at least two of the following: ...[m]arked restriction of activities of daily living...[m]arked difficulties in maintaining social functioning...[m]arked difficulties in maintaining concentration, persistence, or pace...or [r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. Part 404 Subpt. P Appendix 1 §§ 12.04A, 12.04B.

Here, ALJ determined that while Plaintiff has the medically determined impairments of major depressive disorder with psychotic features, PTSD, foot pain and hemorrhoids, which are each considered severe under the Social Security Regulations since they have more than a minimal impact on his capacity to perform basic work functions, these impairments are not attended by clinical findings which meet or equal the criteria of any impairments set forth in Appendix 1, Subpart P of Social Security Regulation No. 4. AR 24. The ALJ determined the Plaintiff's mental impairments do not meet or medically equal the criteria of listings at 12.04 or 12.06. AR 25. The ALJ determined Plaintiff's mental impairments do not result in at least two of the following under the "Paragraph B" criteria: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.* The ALJ assessed claimant's restrictions of daily activities to be mild; his restrictions in maintaining social functioning to be moderate; and his restrictions in maintaining concentration, persistence or pace to be moderate with no episodes of decompensation, which have been for an extended duration. *Id.* Therefore, the ALJ found the "Paragraph B" criteria not satisfied. *Id.* The ALJ then addressed whether the "Paragraph C" criteria of 12.04 or 12.06 had been satisfied. The ALJ determined the evidence fails to establish the presence of the "Paragraph C" criteria because there is no evidence of an inability to function outside a highly supportive living arrangement, or evidence of significant decompensation as a result of claimant's other impairments or residual disease process that has resulted in such marginal adjustment that even minimal increase in mental demands or change in environment would be predicted to cause the [Plaintiff] to decompensate." AR 25.

United States District Court

For the Northern District of California

The ALJ's analysis at the Third Step does not explain how he established that the "Paragraph B" criteria were not met when the record demonstrates that both Dr. Li and Dr. Thomsen found Plaintiff to exhibit "marked" to "extreme" restrictions of activities of daily living; difficulties in maintaining social functioning; and in maintaining concentration, persistence, or pace. *See* AR 427-9, 431-8. The ALJ partially explains his reasoning in the Fourth Step of his analysis by acknowledging he gives greatest weight to the opinion of Dr. Smith and discounts the opinion of Dr. Thomsen. AR 26-8. Based upon the reasoning discussed more fully below, the Court finds the ALJ erred in finding that Plaintiff did not meet the "Paragraph B" criteria of listings 12.04 and 12.06.

### D. Whether the ALJ Erred By Giving Greatest Weight to the Opinion of Dr. Smith

In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians: 1) those who treat the claimant (treating physicians); 2) those who examine but do not treat the claimant (examining physicians); and 3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In *Lester*, the court set forth the general standards that are applied in determining the relative weight to be given to the medical opinions of these three types of physicians:

> As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). We have also held that "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).
>
> The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

*Id.* Therefore, the ALJ could only have properly discounted the opinions of Dr. Li and Dr. Thomsen in favor of Dr. Smith's opinion if he gave specific and legitimate reasons supported by substantial

United States District Court

For the Northern District of California

1    evidence in the record. The Court next examines the ALJ's reasons for discounting the opinions of

2    Dr. Li, Dr. Thomsen, Dr. Ta, and Dr. Stearns in favor of Dr. Smith.

3                  **1.**     **Dr. Li's Medical Source Statement**

4         Plaintiff argues that the ALJ's failure to evaluate the Medical Source Statement (Mental) of

5    Dr. Li is in error. Plaintiff's Motion at 8. The Social Security Regulations require an ALJ to

6    evaluate every piece of medical opinion evidence and to consider all evidence presented in

7    evaluating a claimant's symptoms. 20 C.F.R. §§ 416.927, 416.929.

8         Here, the ALJ's decision makes no mention of the Medical Source Statement (Mental) of Dr.

9    Li. Defendant argues that such omission is, at most, harmless error. Defendant's Motion at 7.

10    However, Defendant cites no authority for the proposition that the failure to evaluate a piece of

11    medical evidence, favorable to a claimant, is harmless error. Moreover, the Defendant's argument is

12    counter to the plain language of the Regulations. Defendant's reliance on *Ukolov v. Barnhart* is

13    unpersuasive; the court in *Ukolov* determined the failure of an ALJ to address a piece of medical

14    evidence was harmless error, in part, because the evidence listed only symptoms but provided no

15    medical opinion as to a condition which the claimant in that case suffered. *Ukolov v. Barnhart*, 420

16    F.3d 1002, 1006 n.6 (9th Cir. 2005). In the present case, Dr. Li made diagnoses in addition to

17    enumerating symptoms as Dr. Li diagnosed Plaintiff with PTSD and depression with psychotic

18    features. AR 427-8. Furthermore, in *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th

19    Cir. 2006) the court held, "where the ALJ's error lies in a failure to properly discuss competent lay

20    testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it

21    can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have

22    reached a different disability determination." In the present matter, Dr. Li has been Plaintiff's

23    primary care provider since November 2007. Plaintiff's Motion at 9; AR 347. Dr. Li's Medical

24    Source Statement (Mental) notes "marked" to "extreme" impairments in mental functioning. AR

25    427-8. Had the ALJ fully credited the opinion of Dr. Li, a treating physician, the Court cannot find

26    that no reasonable ALJ might have reached a different determination as to Plaintiff's disability. The

27    ALJ's failure to evaluate the Medical Source Statement (Mental) of Dr. Li is in error.

28

1    Defendant also argues that if the ALJ's failure to evaluate the medical opinion of Dr. Li was

2    not harmless error, that Dr. Li's opinion was properly discounted because it makes only generic

3    statements about Plaintiff's PTSD and is not supported by the treatment records of Dr. Ta or Dr.

4    Stearns.  Defendant's Motion at 7-8.  The Court is unpersuaded by this argument.  Contrary to

5    Defendant's characterization of Dr. Li's opinion, the Court finds that Dr. Li's opinion explains that

6    Plaintiff experiences auditory hallucinations on a regular basis, which impair his concentration and

7    memory.  AR 427.  Dr. Li opined such hallucinations would result in marked to extreme limitations

8    in mental work-related activities.  AR 427-9.  Furthermore, Dr. Li's diagnosis of PTSD is consistent

9    with the opinions of Dr. Ta and Dr. Stearns.  Therefore, the Court is not persuaded that had the ALJ

10   evaluated Dr. Li's opinion, the ALJ would have been free to discount such opinion.

11   **2.      Dr. Thomsen's Opinion**

12   Plaintiff argues the ALJ erred in disregarding the opinion of examining psychologist, Dr.

13   Thomsen without giving legitimate reasons supported by substantial evidence.  Plaintiff's Motion at

14   12.  Defendant counters that the ALJ properly discounted Dr. Thomsen's opinion that Plaintiff could

15   not function mentally in a work situation on four bases: 1) Dr. Thomsen's opinion was obtained in

16   conjunction with Plaintiff's appeal; ) Dr. Ta did not limit Plaintiff to the same degree as Dr.

17   Thomsen; 3) Dr. Thomsen's evaluation made no allowance for cultural and language differences;

18   and 4) Dr. Thomsen's opinion was inconsistent with the treatment records of Dr. Ta and Dr. Stearns.

19   Defendant's Motion at 5.  The Court concludes that the ALJ improperly discounted the opinion of

20   Dr. Thomsen.

21   As previously discussed, Dr. Li's evaluation, notes "marked" to "severe" impairments in

22   mental functioning.  AR 427-8.  This opinion is consistent with the opinion rendered by Dr.

23   Thomsen.  Therefore, taking into account the opinion of Dr. Li, which the Court has already

24   determined is credible, the ALJ's discounting of Dr. Thomsen's opinion on the basis that Dr. Ta did

25   not diagnose Plaintiff with the same degree of limitation is not based upon legitimate reasons

26   supported by substantial evidence.  In discounting Dr. Thomsen's evaluation, the ALJ points to the

27   fact that Plaintiff's treating physicians, Dr. Ta and Dr. Stearns, did not limit Plaintiff to the degree

28   Dr. Thomsen did.  AR 28.  However, Dr. Li is also a treating physician (AR 425) and Dr. Li's

United States District Court

For the Northern District of California

1    evaluation is entirely consistent with Dr. Thomsen's evaluation.  *Id.* 427-8.  Dr. Thomsen, after

2    performing a battery of tests upon Plaintiff, came to the conclusion that Plaintiff has severe deficits

3    in attention, concentration, and memory; he was unable to subtract a string of 7s starting from 100

4    and he could not recall three words after a short delay; and his IQ score put him in the low average

5    range.  AR 433-4.  This evaluation is consistent with Dr. Li evaluation of "marked" to "severe"

6    impairments in understanding and remembering simple instructions; carrying out simple

7    instructions; making judgments on simple work-related decisions; understanding and remembering

8    complex instructions; carrying out complex instructions; and making judgments on complex work-

9    related decisions.  AR 427.  Moreover, the reports by Drs. Ta and Stearns did not contradict the

10   conclusions reached by Drs. Li and Thomsen.

11          Next, the ALJ found that Dr. Thomsen's opinion should not be given controlling weight

12   based, in part, on the fact that the opinion was solicited by counsel in connection with Plaintiff's

13   Social Security claim.  Because the Court finds that Dr. Thomsen's opinion is consistent with the

14   opinion of Dr. Li and generally consistent with the findings of Dr. Ta and Dr. Stearns and there is no

15   indication of any improprieties in connection with her opinion, the Court concludes that the

16   circumstances under which the report was obtained do not provide a legitimate reason supported by

17   substantial evidence for rejecting her opinion.

18          In *Reddick v. Chater*, the Ninth Circuit addressed the question of whether an ALJ may reject

19   a medical opinion on the basis that it was solicited by counsel in connection with the claimant's

20   disability claim.  157 F.3d 715, 726 (9th Cir. 1998).   Addressing an apparent tension in the Ninth

21   Circuit's case law, the court stated:

22          In *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir.1988), we rejected a doctor's opinion in a
             letter requested by counsel where the opinion was unsupported by medical findings, personal
23          observations, or test reports. *Id.* at 1339-40. We noted in *Burkhart* that "given the evidence
             before the ALJ, [the fact that the letter had been solicited by counsel] was not the only reason
24          the ALJ gave for rejecting (the doctor's) statements." *Id.* at 1339.  However, in *Lester*, where
             there was no sound basis for rejecting a doctor's opinion that had been solicited by counsel,
25          we stated that "the purpose for which medical reports are obtained does not provide a
             legitimate basis for rejecting them." 81 F.3d at 832.  In *Saelee v. Chater*, 94 F.3d 520 (9th
26          Cir.1996), citing *Lester*, we rejected a doctor's opinion letter where "actual improprieties"
             had been found. *Id.* at 523.  In *Saelee*, the doctor's opinion letter varied from his treatment
27          notes and "was worded ambiguously in an apparent attempt to assist [the claimant] in
             obtaining social security benefits." *Id.* at 522.  In that case, the ALJ found that there was "no
28          objective medical basis for the opinion."  *Id.* at 523.

United States District Court

For the Northern District of California

1    We clarify here that, in the absence of other evidence to undermine the credibility of a
     medical report, the purpose for which the report was obtained does not provide a legitimate
2    basis for rejecting it.

3    *Id.*  Conversely, "[e]vidence of the circumstances under which the report was obtained and its

4    consistency with other records, reports, or findings could . . . form a legitimate basis for evaluating

5    the reliability of the report." *Id.*

6         In *Reddick*, the court held that the ALJ had erred in rejecting a letter written by the

7    claimant's treating physician in response to questions from the claimant's counsel and disability

8    insurance carrier, finding that the opinions stated in the letter were based on three years of treatment

9    and were consistent with the opinions expressed by the physician over that time.  *Id.*  Similarly, in

10   *Nguyen v. Chater*, the court found that the ALJ had erred in rejecting an examining psychologist's

11   opinion on the basis that it was solicited by the claimant's attorney, finding that there was no

12   indication of "actual impropriety" and, in contrast to *Saelee*, the psychologist's report was based on

13   an examination and a battery of tests.  100 F.3d 1462, 1464 (9th Cir. 1996).  The court concluded,

14   "[t]hat does not mean that [the examining psychologist] was correct or that his report must prevail,

15   but it does mean that [his] credibility is not subject to attack on the basis of the source of his

16   patient's referral."  *Id.*

17        In this case, as in *Reddick* and *Nguyen*, the opinion expressed by Dr. Thomsen was supported

18   by a battery of tests and a thorough examination.  Her findings are not conclusory or ambiguous but

19   rather, are clearly stated and supported by her observations and test results.  Nor is there any

20   indication that Dr. Thomsen engaged in impropriety with respect to her report.  Finally, as discussed

21   below, the medical record does not contradict Dr. Thomsen's opinion, contrary to the assertions of

22   the Defendant.  Therefore, the Court concludes that the ALJ erred to the extent that he rejected Dr.

23   Thomsen's opinion on the basis of the circumstances under which it was obtained

24        As to Defendant's argument that Dr. Thomsen's evaluation is discountable to the extent it

25   required Plaintiff to perform activities requiring English, a language Defendant claims Plaintiff

26   cannot speak, this is a mischaracterization of the record.  Defendant's Motion at 5; AR 28.  The ALJ

27   never determined Plaintiff to be unable to speak English, but rather found Plaintiff to have limited

28   functional capacity in English, in the ALJ's own words, "he has enough English to be able to

United States District Court

For the Northern District of California

1  function in America and feed himself and get by...my conclusion is that he shows evidence of the

2  fact that in the past he's had the ability to be supervised in English."  AR 44-5.  Dr. Thomsen's tests,

3  which required Plaintiff's abilities to communicate in English, included testing Plaintiff's ability to

4  spell the word "world" backwards and recognize a specific letter in a string of letters.  AR 433.

5  There is no evidence in the record to support the ALJ's conclusion that Dr. Thomsen's conclusions

6  were flawed by his failure to account for language or cultural differences.  The ALJ's decision to

7  discount the opinion of Dr. Thomsen, an examining physician, in favor of a non-treating, non-

8  examining physician is not supported by specific and legitimate reasons and substantial evidence

9  and is therefore in error.

10  ### 3.    The Opinions of Dr. Ta and Dr. Stearns

11        Plaintiff argues the ALJ erred in rejecting the opinions of Dr. Ta and Dr. Stearns without

12  giving specific and legitimate reasons supported by substantial evidence.  Plaintiff's Motion at 9.

13  Defendant counters that Dr. Ta and Dr. Stearns gave no opinions, therefore, there was nothing for

14  the ALJ to reject.  Defendant's Motion at 3-4.  Defendant also argues that a GAF score is not the

15  equivalent of a medical opinion.  Defendant's Motion at 4-5.  The Court finds both that Dr. Ta and

16  Dr. Stearns gave medical opinions in diagnosing Plaintiff with PTSD and that a GAF score is the

17  equivalent of a medical opinion.

18        Defendant argues that neither Dr. Ta nor Dr. Stearns offered a medical opinion about how

19  Plaintiff's symptoms or clinical findings impacted his specific ability to function, particularly in a

20  work setting, therefore there was no opinion for the ALJ to reject or discount.  Defendant's Motion

21  at 4.  Aside from Defendant's citation to 20 C.F.R. §§ 404.1527 (defining opinions as statements

22  from physicians and psychologists or other acceptable medical sources that reflect judgments about

23  the nature and severity of a claimant's impairments, ***including claimant's symptoms, diagnosis and***

24  ***prognosis***, what claimant can still do despite their impairment, and claimant's physical or mental

25  restrictions (emphasis added))  and 404.1528 (defining symptoms, signs, and laboratory findings),

26  Defendant's argument that a doctor's diagnosis is not a medical opinion is not supported by

27  authority.  The Court is not persuaded that a doctor must offer an opinion as to how a claimant's

28  medical impairment would impact their ability to function in a work setting.

**United States District Court**

For the Northern District of California

1    Defendant also argues that a GAF score is not the equivalent of a medical opinion.  The GAF

2  is a numeric scale ranging from zero to one hundred, which is used to rate social, occupational and

3  psychological functioning "on a hypothetical continuum of mental health-illness." *Diagnostic and*

4  *Statistical Manual of Mental Disorders*, 32 (4th ed. Am. Psychiatric Ass'n. 1994) ("DSM-IV").  The

5  DSM-IV states that Axis V, where Dr. Ta and Dr. Stearns assessed Plaintiff with a GAF score of 45-

6  50, is "for reporting the clinician's judgment of the individual's overall ***level of functioning***." *Id*. at

7  30 (emphasis added).  Defendant's argument that a GAF score is not the equivalent of a medical

8  opinion is inconsistent with the description in the DSM-IV.  Although the Ninth Circuit does not

9  appear to have addressed the specific issue of whether a GAF score constitutes a medical opinion in

10  and of itself, other Circuits have considered it and are informative.  The Seventh Circuit has

11  overturned the denial of benefits by an ALJ when the ALJ improperly relied on the opinion of a

12  State Agency psychiatrist and psychologist who had not reviewed a treating doctor's records which

13  contained diagnoses of Major Depressive Disorder and Bipolar Disorder and a consistent GAF score

14  of 45-50 which the court held would affect the state agency reviewers' assessment of claimant's

15  medical functional capacity.  *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010).  The Eighth

16  Circuit ruled than an ALJ erred in evaluating opinion evidence when he failed to discuss or consider

17  many of the GAF scores below 50.  *Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009).

18  Another Eighth Circuit case notes that a GAF score of 50 reflects a serious limitation on a claimant's

19  ability to perform basic life tasks.  *Bruggeman v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003).

20  Further, even though the Ninth Circuit has not directly weighed in on the issue, its treatment of GAF

21  scores is consistent with interpreting a GAF score to be the equivalent of a medical opinion.  *See*

22  *Belknap v. Astrue*, 364 Fed.Appx. 353, 355, 2010 WL 411099, 1 (9th Cir. 2010) (finding ALJ

23  properly rejected a physician's opinion that claimant was disabled when GAF scores from another

24  physician indicated only transient or mild symptoms); *Fisher v. Astrue*, 429 Fed.Appx. 649,

25  652-653, 2011 WL 1575449, 3 (9th Cir. 2011) (finding discrepancy between the results of a mental

26  status examination and overall GAF score a germane reason for rejecting the GAF score).  The Court

27  concludes that a GAF score is the equivalent of a medical opinion. Thus, the ALJ erred in failing to

28  discuss what weight, if any, to be assigned to the opinions of Dr. Ta and Dr. Stearns.

### 4.   Dr. Smith's Opinion

As already discussed, the ALJ's decision to give greatest weight to the opinion of Dr. Smith, a non-treating, non-examining physician, is not supported by specific and legitimate reasons supported by substantial evidence and is not consistent with the opinions of Dr. Li, Dr. Thomsen, Dr. Ta, or Dr. Stearns and is therefore in error.

### F.   Remedy

"The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Conversely, "where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Id.* With respect to an ALJ's improper disregard of evidence:

> [T]he district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id. See also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995) (Where the ALJ "fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law'" (citation omitted)).

In this case, the Court credits the opinions expressed by Dr. Thomsen in her report, including her opinions that: 1) Plaintiff has severe impairments as to attention/concentration, executive functioning, memory, and visuospatial abilities; 2) he suffers from severe anxiety; 3) he suffers from severe depression, and 4) that due to his mental impairment he "has difficulty making effective decisions, coming, up with solution to problems, and managing daily tasks and affairs. His faulty ability to understand others makes him unable to accurately read social situations in ways that are important for accurate reasoning and sound judgment." AR 433-38. The Court also credits the opinions expressed by Dr. Li, including that: 1) Plaintiff has marked impairments in understanding and remembering simple instructions, carrying out simple instructions, in making judgements on

30

**United States District Court**
For the Northern District of California

1  simple work-related decisions; 2) he has extreme impairments in understanding and remembering

2  complex instructions, carrying out complex instructions, in making judgments on complex work-

3  related decisions; 3) he has marked impairments in his ability to interact appropriately with the

4  public, interact appropriately with supervisors, interact appropriately with co-workers; and 4) he has

5  extreme impairment in his ability to respond appropriately to usual work situations and to changes in

6  a routine work setting.  AR at 427-8.

7        The Court concludes that the above-described opinions regarding Plaintiff's mental

8  impairments satisfy the criteria for a disability under "Paragraph B" of both listings 12.04 and 12.06.

9  Further, based on the current record, the Court finds that the ALJ failed to provide legally sufficient

10  reasons for rejecting the above-listed evidence, there are no outstanding issues that must be resolved

11  before a determination of disability can be made, and it is clear from the record that the ALJ would

12  be required to find the claimant disabled were the evidence of Dr. Li and Dr. Thomsen credited.

13  Therefore, the Court remands the case and orders an immediate award of benefits to Plaintiff.

14  **IV.     CONCLUSION**

15        For the foregoing reasons, the Court GRANTS Plaintiff's Motion and DENIES Defendant's

16  Motion.  The Court reverses the ALJ's decision and remands Plaintiff's claim for an immediate

17  award of benefits.

18        IT IS SO ORDERED.

19  Dated: June 11, 2012

20

21  _____

22  JOSEPH C. SPERO
    United States Magistrate Judge

23

24

25

26

27

28